**In re KAASE et al.**

**Patent Appeal No. 4860.**

Court of Customs and Patent Appeals.

Feb. 7, 1944.

James B. L. Orme, of New York City, for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 22, 23, and 33 of appellants' application for a patent filed on July 29, 1938. The claims read as follows:

"22. A process for treating textile material which comprises impregnating the material with a compound having the formula R. $N=C=Y$ where R is an aliphatic radical containing at least ten carbon atoms and Y stands for a member of a group consisting of O and S, and heating the impregnated material to render the same water-repellent."

"23. A textile material heated with a compound having the formula R. $N=C=Y$ where R is an aliphatic radical containing at least ten carbon atoms and Y stands for a member of a group consisting of O and S, said material being water-repellent."

"33. A process which comprises impregnating a textile material with a substance selected from the group consisting of: an isocyanate and a isothiocyanate, each containing an aliphatic radical of at least ten carbon atoms, and heating the impregnated material until the material becomes water-repellent."

Each of the process claims above quoted embraces the treatment of textile material rendering it water-repellent by impregnating it with a material selected from a group consisting of isocyanates and isothio-

cyanates having an aliphatic radical containing at least 10 carbon atoms.

In the claims the letter O signifies isocyanates and the letter S signifies isothiocyanates.

Several claims were allowed relating to the use of isocyanates. As will be observed, the claims are of the Markush type. They were rejected upon two grounds:

1. That they are unpatentable over the British patent 461,179, issued February 8, 1937.

2. That they are unpatentable over the issue of an interference, No. 76,387, in which appellants were the losing party.

It is conceded that the British patent discloses the subject matter of the claims, but appellants contend that the record shows that they had completed the invention prior to the date of the British patent, and that therefore it is not a proper reference.

Appellants' application states that it is a continuation, in part, of their then copending applications, serial No. 76,738, filed April 28, 1936, and serial No. 196,622, filed March 18, 1938. This last named application does not appear in the record, but it does appear that on December 1, 1942, a patent was issued on their application filed on April 28, 1936. This patent relates to the use of isocyanates in the involved process.

It is appellants' contention that they are entitled to the date of their application of April 28, 1936, upon which patent was issued, for constructive reduction to practice of the invention and that date being earlier than the date of the British patent, said British patent is not a valid reference.

With respect to the rejection upon the issue of the interference, No. 76,387, it is appellants' contention that such rejection was improper for the reasons hereinafter stated.

Appellants' instant application discloses the use of both isocyanates and isothiocyanates in carrying out their process. As hereinbefore indicated, appellants' application of April 28, 1936, discloses the use of isocyanates, but no mention is made therein of the use of isothiocyanates.

It appears from the record that appellants' instant application had been involved in two interferences, Nos. 76,387 and 78,-586.

The parties to interference No. 76,387 were appellants, William E. Hanford and Donald F. Holmes, their application being filed on October 8, 1937, and a third party, Alfred Eckelmann.

Two counts were involved in this interference. Count 1 reads as follows:

"Count 1. A process which comprises impregnating a cellulose textile material with an isothiocyanate of the formula RNCS in which R is an aliphatic hydrocarbon radical containing more than ten carbon atoms, and heating the impregnated material until the material becomes water-repellent."

It appears that the party Eckelmann abandoned the contest. Appellants, being the junior party, were placed under an order to show cause why judgment should not be rendered against them, the earliest date of invention alleged by them in their preliminary statement being subsequent to the filing date of the party Hanford and Holmes.

On December 31, 1940, the Examiner of Interferences rendered a decision adverse to appellants which reads as follows:

"Whereas Kaase and Waltmann, a junior party, have failed to make any showing why judgment on the record should not be entered against them, in view of the fact that the only date alleged in their preliminary statement which might be availed of by them is subsequent to the filing dates of Hanford and Holmes, a junior party, and Eckelmann, the senior party, and whereas the time allowed for such showing has expired, pursuant to the order of February 3, 1939, it is hereby adjudged that Walther Kaase and Ernst Waltmann are not the first inventor of the subject matter in issue.

"As there is no question of priority on which appeal could be taken, no limit of appeal is set."

It thus appears that appellants were the losing party in this interference.

Interference No. 78,586 was between appellants' instant application and the application of Hanford and Holmes involved in interference No. 76,387.

The sole count corresponded to claim 33 of the application before us.

It appears from the record that Hanford and Holmes filed an abandonment of the contest and the interference was dissolved.

Appellants' application, filed April 28, 1936, was involved in two interferences,

1018

Nos. 78,386 and 78,587, with the same application of the party Hanford and Holmes that was involved in interferences Nos. 76,387 and 78,586.

In these interferences the use of isothiocyanates was not involved and the issue was as to which of the parties was the prior inventor of the use of isocyanates. It appears that in both interferences, the party Hanford and Holmes conceded to appellants' priority of invention in the use of isocyanates, and decisions were rendered in each case awarding priority of invention to appellants.

Pursuant to the foregoing proceedings on December 1, 1942, a patent was issued to appellants, as hereinbefore stated, for a process involving the use of isocyanates only. On June 2, 1942, a patent was issued to the interference party, Hanford and Holmes, for a process of impregnating cellulose fabrics with an alkyl isothiocyanate. The patent discloses the use of both isothiocyanates and isocyanates, but the claims are limited to the use of isothiocyanates.

It thus appears that as a result of said interferences appellants have a patent for the use of isocyanates in impregnating textile material, and Hanford and Holmes have a patent for the use of isothiocyanates in impregnating cellulose materials.

We will first consider the rejection of the claims on the British patent.

■ It is conceded that the British patent discloses the subject matter of the claims, that is, the use of both isocyanates and isothiocyanates. Appellants, however, contend that since their application of April 28, 1936, discloses the use of isocyanates, and antedates the British patent, said patent is not a valid reference. With respect to this contention the examiner, in his statement on appeal, said:

"Applicants' position is stated on page 8 of paper No. 11 as follows: 'The present application, although filed after the said date of the British patent, is a continuation-in-part of copending application Serial No. 76,738, filed April 28, 1936, which also supports fully the claims mentioned *so far as isocyanates are concerned*. The present application gives support not only for isocyanates, but also for isothiocyanates * * * In view of the fact that applicants are the first inventors of the isocyanates * * * it is believed that they are the inventors of this Markush group.'

(Italics added). Presumably by 'inventors' in the last line 'first inventors' is meant.

"This position is considered untenable in view of In re Steenbock, 1936 C.D. 594, wherein the court held in effect that a prior parent application disclosing one species could not be utilized to overcome an intervening reference for the purpose of securing generic claims in a later filed application."

The Board of Appeals in its decision did not refer to the case of In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244 (1936 C. D. 594), relied upon by the examiner, but stated:

"Applicants' position is that since their parent application discloses the use of isocyanates and antedates the British patent, they are the first inventors of the group which includes isothiocyanates citing Ufer et al. v. Williams, 79 F.2d 892, 23 C.C.P.A., Patents, 797, and Kyrides v. Andersen, 121 F.2d 514, 28 C.C.P.A., Patents, 1336. These cases were interference cases where the date of invention of the one substance was the earliest date of invention for all of the substances.

"In the present case the British patent which discloses both types of cyanates, indicates prior invention by some one other than applicants of the isothiocyanates. Hence, we do not consider applicants' position as tenable where it appears on the face of the record that applicants are not the first inventors of the isothiocyanates."

We agree with the examiner that our decision in the case of In re Steenbock, supra, is controlling here. The questions decided there are the same questions which, on this branch of the case, are involved here. In that case Steenbock filed an application disclosing the treatment of yeast, a fungus material, through irradiation by ultra-violet rays. He later filed an application for the treatment of yeast and of fungus material generally. This last application was rejected by the examiner upon the following references:

"Steenbock (Br.), 236,197, November 12, 1926;

"Journal of Biological Chemistry, Vol. 63, February, 1925, pages 25-26, entitled 'Antirachitic Activation by Light';

"Soc. Chem. & Ind. Journal, Vol. 46 (1927), pages 1202 and 1203, entitled 'Scientific Research in Relation to Actionotherapy.'"

Each of the references disclosed the treatment of yeast by irradiation of ultra-violet rays. The Steenbock reference was appellant's British patent. Appellant was permitted to file an affidavit under rule 75 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix, showing that he had completed the invention prior to the dates of the references. If he was confined to the date of his last application each of the references was a statutory bar against the allowance of the claims, but if he had disclosed the invention in an earlier application filed within the statutory limit, no statutory bar existed.

In earlier applications filed December 27, 1926, the treatment of yeast was disclosed but not the treatment of fungus material generally.

The Board of Appeals, in its decision in that case, said:

"Claims 3, 4, 5, and 6 are broader in their scope, since they cover the activation of a fungus material. In the present application applicant alleges to have discovered that any fungus material can be activated. These claims have also been rejected on the British patent and the publications. No disclosure has been made of activating fungus material in general either in applicant's prior patent No. 1,680,818, or in the two applications filed December 27, 1926. In one of these applications, No. 157,430, an amendment was made on March 22, 1928, which stated that yeast is an example of a fungus. This, of course, cannot be relied upon by applicant to obtain an effective United States filing date for the activation of fungus, in general, prior to the filing date of the present application. Hence, as to these broad claims, both of the publications are statutory bars, and applicant's British application is also a statutory bar as a two year publication."

The foregoing quotation appears in our opinion in said case. The similarity between that case and the one at bar is obvious. There, as here, a generic claim was presented and reliance was had for a date of invention based upon the disclosure in an earlier application of only one species of the invention.

In our opinion in the Steenbock case, supra, after quoting from the decision of the Board of Appeals, we said:

"As we understand it, the Board of Appeals held that, although appellant was entitled to claim all subject-matter in the involved application disclosed but not claimed in his copending applications, that is the process of subjecting yeast, a fungus material, to irradiation by ultra-violet rays for a sufficient period of time 'to effect antirachitic activation in substantial degree,' he was not entitled to claim the process as applied broadly to fungus material, because there was no disclosure of such a process in his copending applications, and, also, for the reason that each of the references which disclosed such a process was published more than two years prior to the filing of the involved application.

"The principle is well established in chemical cases, and in cases involving compositions of matter, that the disclosure of a species in a cited reference is sufficient to prevent a later applicant from obtaining generic claims, although the disclosure in an application of a species may not be a sufficient basis for a generic claim. See In re Ellis, 37 App.D.C. 203; In re Dosselman, 37 App.D.C. 211; In re Langmuir, 62 F.2d 93, 20 C.C.P.A., Patents 733; In re Walker, 70 F.2d 1008, 21 C.C.P.A. Patents, 1121, 1127; In re Burk, 74 F.2d 547, 22 C.C.P.A., Patents 857.

"Although appellant's involved application was originally alleged to be a true division of his application No. 157,430, filed December 27, 1926, which matured into patent No. 1,871,136, August 9, 1932, there was no disclosure in that application of the involved process as applied to fungus material generally—the process there disclosed being limited, so far as fungus material is concerned, to yeast. Accordingly, although described as a true division of his original application, appellant, by an amendment to the involved application, dated December 7, 1933, substituting the language 'continuation in part' for the word 'division,' conceded that it was not a true division, and that his original disclosure was limited to a process involving yeast only.

"Applying the rule hereinbefore stated, it is perfectly clear that appellant is not entitled to the broad claims here on appeal."

There is no distinction in principle between the case at bar and the Steenbock case. That case has been cited by us with approval in the following cases: In re Soll, 97 F.2d 623, 25 C.C.P.A., Patents, 1309; Kyrides v. Andersen et al., 121 F.2d 514, 28 C.C.P.A., Patents, 1336,

and In re Prutton, 121 F.2d 524, 28 C.C.P.A. Patents, 1343.

Appellants attempt to distinguish the Steenbock case from the case at bar in two respects:

1. Their brief states that in Steenbock's second application only yeast was described, but was claimed broadly as fungus. In this appellants are in error. In our opinion in the Steenbock case we quoted from the decision of the Board of Appeals, as hereinbefore stated, which quotation contains the statement that in his application there directly involved he alleged that he discovered that any fungus material could be activated.

2. Appellants stress as a distinction between the two cases that in the Steenbock case it was held that the references constituted a statutory bar, while in the case at bar no such condition exists. It is surprising that counsel did not observe that in the Steenbock case the appellant there had filed an affidavit under rule 75 hereinbefore noted, alleging that his invention antedated the references. Had it not been for this affidavit there would have been no occasion to refer to a statutory bar except with relation to Steenbock's British patent, for the ordinary rule respecting a reference published before appellant's filing date would have been applicable.

Therefore, contrary to the contention of appellants, our decision in the Steenbock case is applicable to the case at bar in every particular.

Appellants rely upon our decisions in the cases of Ufer and Niemann v. Williams, 79 F.2d 892, 23 C.C.P.A., Patents, 797, and Kyrides v. Andersen et al., 121 F.2d 514, 28 C.C.P.A., Patents, 1336, in support of their contention that they are entitled to the date of April 28, 1936, for the completion of their invention and hence the British patent is not a proper reference.

Both of these cases were interference proceedings and, of course, no question of patentability was there involved.

In the case of Ufer and Niemann v. Williams, supra, a Markush type of claim was involved, the count calling for the utilization of a compound of metal "from the group consisting of chromium, vanadium, potassium and aluminum." We held that upon the evidence appellee was the first to conceive the invention in so far as it related to the use of compounds of chromium, aluminum, and potassium, but there was no evidence that appellee had ever used vanadium in the involved process. Appellants relied upon their German patent antedating appellee's application which disclosed the use of a compound of potassium and a compound of vanadium.

The question was which, if either, of the parties were entitled to an award of priority.

In affirming the decision of the Board of Appeals, holding that appellee was entitled to an award of priority, we held that, according to the record, long before either of the parties entered the field it was known through what was entitled the "Medsforth publication" that a compound of vanadium was an equivalent of compounds of chromium and aluminum in carrying out the there involved process. In our opinion we said:

"Appellants contended before the Patent Office tribunals, and as we understand their brief they here contend, that the said Medsforth publication is a complete anticipation of the invention defined in the counts here involved. Whether that be true or not we may not here determine, for that is a question of the patentability of the counts with which we are not here concerned; but we are of the opinion that said Medsforth publication warrants a finding that, before the filing date of appellants' German application, it would be known to one skilled in the art, having knowledge of the use of chromium and aluminum in the process here involved, that a compound of vanadium was an equivalent of compounds of chromium and aluminum in carrying out said process.

"We are of the opinion that the Board of Appeals did not err in holding that appellee was the first to reduce to practice the invention involved in the counts in issue, and therefore its decision, affirming the decision of the examiner awarding priority of invention to appellee, should be affirmed by us."

In the case at bar there is not a scintilla of proof that prior to the issue of the British patent it was known to one skilled in the art that an isothiocyanate was an equivalent of an isocyanate in carrying out the process here involved.

It is, therefore, clear that there is nothing in our opinion in the case of Ufer and Niemann v. Williams, supra, that is inconsistent with our opinion in the Steenbock case.

The case of Kyrides v. Andersen et al. supra [121 F.2d 515], involved the question of priority of invention of the subject matter of a count reading as follows:

"2. A composition embodying a cellulose derivative and containing as a plasticizer an alkyl acetonyl phthalate."

It appears that Kyrides filed an early application disclosing the use of acetonyl ethyl phthalate, which is one of the alkyl acetonyl phthalates. The Patent Office tribunals had held that the disclosure by Kyrides of only one species of the alkyl acetonyl phthalates was not sufficient to entitle him to an award of priority of the invention defined in the count. In reversing the decision of the Board of Appeals in that case we said:

"The issue presented in this appeal is not whether appellant is entitled to a patent for a composition embodying a cellulose derivative and containing as plasticizers the subgeneric class of alkyl acetonyl phthalates, but rather whether having constructively reduced to practice a composition embodying a cellulose derivative and containing as a plasticizer *an* alkyl acetonyl phthalate (acetonyl ethyl phthalate, one of the members of the subgeneric class) long prior to appellees' constructive reduction to practice, appellant is entitled to an award of priority of invention.

"Certainly it cannot be held that appellees were the first to conceive and constructively reduce to practice a composition embodying a cellulose derivative and containing as a plasticizer all of the alkyl acetonyl phthalates when it clearly appears from the record that appellant was the first to reduce to practice a composition embodying a cellulose derivative and containing as a plasticizer one of the alkyl acetonyl phthalates.

\*     \*     \*     \*     \*

"As hereinbefore noted, the involved count calls for a composition embodying a cellulose derivative and containing as a plasticizer *an* alkyl acetonyl phthalate. Accordingly, it is sufficiently broad to include any one of the subgeneric class of the alkyl acetonyl phthalates."

In our opinion in said case, we cited the Steenbock case and with respect to it said:

"In the case of In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244, referred to by the board in its decision, we said: 'The principle is well established in chemical cases, and in cases involving compositions of matter, that the disclosure of a species in a cited reference is sufficient to prevent a later applicant from obtaining generic claims, although the disclosure in an application of a species may not be sufficient basis for a generic claim. See In re Ellis, 37 App.D.C. 203; In re Dosselman, 37 App.D.C. 211; In re Langmuir, 62 F.2d 93, 20 C.C.P.A., Patents, 733; In re Walker, 70 F.2d 1008, 21 C.C.P.A., Patents, 1121, 1127; In re Burk, 74 F.2d 547, 22 C.C.P.A., Patents, 857.' And, applying the rule therein announced, the court held that appellant was not entitled to a patent for a process relating to fungus material generally, in view of the fact that his original disclosure was limited to a process involving yeast only."

In the case at bar it definitely appears that appellants were not the first inventors of the involved process using as an element thereof isothiocyanates.

It thus appears that neither of the cases relied upon by appellants supports their contention, and there is no conflict between our decision therein and our decision in the Steenbock case.

In view of all the foregoing, it is not necessary for us to consider the second ground of rejection of the involved claims, viz., that they are not patentable over the issue of interference No. 76,387, in which it was held that appellants were not the first inventors of the use of isothiocyanates in the involved process. We think it proper to say, however, that we are in full accord with the holdings of the Patent Office tribunals that the claims are not patentable over the issue of said interference.

It is appellants' contention that inasmuch as in interference No. 78,586 claim 33 now before us was the sole issue in that interference and Hanford and Holmes abandoned the contest, the dissolution of the interference was equivalent to an award of priority to appellants.

It is elementary that the dissolution of an interference is not equivalent to an award of priority of invention. Appellants secured nothing as a result of the decision but were left in the same situation as if no interference had been declared. The fact that Hanford and Holmes, by abandoning the contest, relinquished any right to the claim of the interference, did not in any way affect their right to a patent

upon the use in the process of isothiocyanates.

What appellants are here seeking is to regain what they lost in interference No. 76,387. In the patent issued to Hanford and Holmes as a result of the decision in that interference, the public is taught that isothiocyanates may be used in the involved process.

Now appellants seek to dominate the patent to Hanford and Holmes by claiming as an element of their process the use of isothiocyanates, although it has been determined that appellants were not the first inventors of such use.

It is true that the patent to Hanford and Holmes relates only to the use of isothiocyanates in connection with cellulose fabrics, while appellants' process relates to textile materials generally including cellulose material, but appellants' application shows that the process is equally applicable to both kinds of material.

However, it is unnecessary to pursue the discussion further, for we are clear, as hereinbefore indicated, that the involved claims were properly rejected upon the British patent.

The decision appealed from is affirmed.

Affirmed.